Jesse PUCKETT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 90A02–1104–CR–369.

Court of Appeals of Indiana.

Nov. 15, 2011.

Stacy R. Uliana, Bargersville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jesse Puckett appeals the trial court's sentencing decision after he admitted to violating his probation for Class C felony child molesting. We reverse and remand.

### Issue

The restated issue we address is whether the trial court abused its discretion in requiring Puckett to serve his entire previously-suspended four-year sentence for violating his probation.

### Facts

On October 14, 2004, the State charged Puckett with two counts of Class B felony child molesting. The information alleged that on two separate dates in April 2004 in Wells County, Puckett had sexual intercourse with R.S. In April 2004, Puckett was eighteen, and R.S. was twelve. In investigating the case, several witnesses came forward to claim that they saw R.S. at a party where she and Puckett allegedly had sex in April 2004, and that R.S. appeared to be at least sixteen years old. Puckett maintained that R.S. had told him she was sixteen or seventeen, and R.S. admitted in a deposition that she might have told Puckett she was fourteen, fifteen, sixteen, or seventeen.

On January 27, 2005, the State and Puckett reached a plea agreement whereby he would plead guilty to one count of Class C felony child molesting and the State would dismiss the two Class B felony charges. The agreement further specified that Puckett would receive an entirely suspended sentence, with the length to be determined by the trial court. On March 16, 2005, Puckett pled guilty in open court, providing as a factual basis that he had fondled R.S. with intent to arouse his or her sexual desires. The trial court took the plea under advisement. On May 16, 2005, the trial court accepted the plea agreement and imposed a sentence of four years, suspended to probation, which corresponded with the recommendation of the probation officer who had prepared the presentence report.

On January 26, 2007, the State filed a petition alleging Puckett had violated his probation by failing to notify the probation department of an intimate relationship, having contact with a person under the age of eighteen, and using a computer with internet access. On February 23, 2007, the State amended this petition to allege that Puckett had been charged in Grant County with Class D felony failure to register as a sex offender. On August 8, 2008, the State filed a second amended petition further alleging that Puckett had used alcohol, slept in a place other than his residence without prior approval, and had been present at a park or school. On August 29, 2008, the State filed a third amended petition further alleging that Puckett had traveled alone after 10:00 p.m. without prior approval, had been present at a park or school, and had been charged in Huntington County with Class A misdemeanor check deception for writing a bad check for $25.60.

On October 24, 2008, before a hearing was held on any of the probation violation petitions, Puckett filed a petition for post-conviction relief, alleging that his plea was not knowingly or intelligently entered into or that he received ineffective assistance of counsel in receiving the advice to plead guilty. On December 22, 2009, the post-conviction court denied Puckett's petition. Puckett did not appeal this denial.

On August 9, 2010, Puckett pled guilty in Grant County to one count of Class D felony failure to register as a sex offender. The time period in which Puckett had failed to register was late 2006 to early 2007. Puckett received a sentence of two years, with one and a half years suspended and six months executed.

On April 8, 2011, the trial court held a hearing on the State's third amended petition to revoke probation. By this date, the trial judge who had originally sentenced Puckett was no longer on the bench and the prosecutor at the time of original sentencing was now the trial judge. Thus, a special judge was appointed to hear the probation revocation matter. At the beginning of the hearing Puckett indicated that he would admit to violating his probation by committing the crime of Class D felony failure to register as a sex offender and the State agreed to dismiss, and not present evidence on, any of the other probation violation allegations.

At the hearing it was revealed that Puckett was now married and had a newborn child. Puckett also presented several letters from friends, family, his wife, and employers, attesting to his positive character. Puckett himself also wrote a lengthy letter, noting among other things the close relationship he enjoyed with his younger brothers. The State presented no evidence but argued that Puckett's conviction for failing to register as a sex offender warranted requiring him to serve the full four years of his previously suspended sentence.

Before imposing sentence on Puckett, the trial court stated that it had reviewed

the files in the case, and then made the following comments:

The evidence clearly shows that the Defendant had sex with a twelve year old, with a twelve year old. We can say okay that she had told some other age or something like that, but we also know that he was prepared, he had a prophylactic with him during the course of the exchange, he and another friend brought the alcohol, we can go through that information and see how horrible that crime was and we can in fact look at friends and relatives and see maybe how bad the girl was, but there is even an exclusionary rule in regards to that, that the jury couldn't even hear much of the information that maybe the family thinks is of great concern because the facts remain he was 18 years old and the child was 12 years old. Now it's not a question even if she would have asked to have intercourse the crime is there and once the crime is there a life is affected. So the crime is absolutely unequivocally without any hesitation in my mind a horrendous crime.... We have letter after letter, comment after comment, in regards to the performance at work and what a great guy the Defendant is and certainly in the areas that were mentioned there it seems like he has excelled and excelled quite well. I first started with Exhibit A and Exhibit A is the statement of the Defendant himself you know he just said he just wanted to have fun and never thought of things first and other things came up and one of the things that really surprised me was one of the things that I thought was almost horrible he said his brothers looked up to him and this is the example he gave to his brothers, that was a little scary, is his brothers going to grow up and have intercourse with a sixth grader. The net result is that the sentence was unbelievably lenient in my estimation. I don't know, I have been a lawyer for forty some years and I'm not, I don't remember any cases that I was in touch with that that ever occurred, a completely suspended sentence for an 18 year old having sex with a sixth grader.... Of course the investigation that accompanied the Information that I had indicated that he was staying at a house and the lady of the house apparently was in a van and in the van was her fourteen year old daughter. That was the information in the file. The police officers would ask him why do you have all these kids toys and the explanation was "I don't know, I didn't have an answer." You know the thing that when the Court said you are under an order to report as a sex offender it's no joke, it's emphatic, it is absolutely unequivocal, everybody in that neighborhood must know that there is a sex offender and look out and be careful. I think there are three or four fairly close to my house, I mean I have looked at the picture of each individual that I think I am aware of who is in my neighborhood and that's accessible to everybody on the internet, you just punch the button and you look at the picture, you find out the information about the individual, you know the exact address and then you google it and look at his house so that you can figure out what his house looks like so you can advise your kids if necessary. So the offense itself maybe is not a sex offense, but it is absolutely integral with the crime itself.... So now you see that that was done that we have all these other allegations that are being dismissed, but you can't wipe all those things out of your head.... So the Court is going to revoke the entire sentence and sentence to you four years of incarceration because I am doing that I would ask you to stay in the Courtroom. I have considered the letters that say very complimentary things, but the very essence of the primary thing that we

want to do is monitor you and you failed to do so and therefore I think that you should serve your time.

Tr. pp. 15–18.[1]

After this statement, defense counsel objected that the trial court had improperly relied upon a probable cause affidavit from Grant County and probation violation allegations that the State had agreed to dismiss and not present evidence on. The trial court responded,

> Okay, let me state for the record that I believe that solely upon the violation itself as alleged is solely justifying the sentence that I imposed and so even though I mentioned those other things even without those things the Court feels with absolutely [sic] certainty that the sentence should be and in fact should be served immediately.

*Id.* at 19. Puckett now appeals.

### Analysis

 Puckett solely challenges the sentenced imposed by the trial court after he admitted to violating his probation. If a defendant is found to have violated his or her probation, a trial court may (1) continue the defendant on probation; (2) extend the probationary period for not more than one year beyond the original period; and/or (3) order all or part of a previously suspended sentence to be executed. Ind. Code § 35–38–2–3(g). We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion. *Abernathy v. State,* 852 N.E.2d 1016, 1020 (Ind.Ct.App.2006). "An abuse of discretion occurs if the trial court's deci-

sion is against the logic and effect of the facts and circumstances before the court." *Id.* A defendant cannot collaterally attack the propriety of an original sentence in the context of a probation revocation proceeding. *Id.* However, a defendant is entitled to challenge the sentence a trial court decides to impose after revoking probation. *Id.*

 A defendant facing revocation of probation is entitled to certain due process rights, including: (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of the evidence against him or her; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. *Sanders v. State,* 825 N.E.2d 952, 955 (Ind. Ct.App.2005), *trans. denied.* The written statement requirement is a procedural device aimed at promoting accurate fact finding and ensuring the accurate review of revocation decisions. *Hubbard v. State,* 683 N.E.2d 618, 620–21 (Ind.Ct.App.1997). A transcript of the evidentiary hearing, although not the preferred way of fulfilling the writing requirement, is sufficient if it contains a clear statement of the trial court's reasons for revoking probation.[2] *Id.* at 621.

Here, the trial court's statement of reasons for entirely revoking Puckett's proba-

---

1. In this case, separate transcripts were prepared for Puckett's guilty plea, original sentencing, and probation revocation proceedings. Throughout this opinion we will only quote from and cite to the probation revocation transcript.

2. When revoking probation and imposing a sentence, a trial court is not required to issue a sentencing statement that complies with the

mandate for original sentencing statements outlined in *Anglemyer v. State,* 868 N.E.2d 482 (Ind.2007). *See Berry v. State,* 904 N.E.2d 365, 366 (Ind.Ct.App.2009). The sole issue presented in *Berry* was whether a trial court revoking probation and imposing a sentence had to comply with *Anglemyer;* it did not address the due process written finding requirement.

tion and requiring him to serve the full four years of the previously suspended sentence is problematic. First, the trial court plainly and repeatedly expressed its displeasure with Puckett's original plea agreement. The trial court indicated at least four times that Puckett had sexual intercourse with R.S., but Puckett had pled guilty to Class C felony child molesting by fondling. Indeed, the clear majority of the trial court's statements concerned its belief that Puckett had received a very generous plea bargain for what it considered to be a "horrendous crime...." Tr. p. 16. The trial court's finding, despite the terms of the plea agreement, that Puckett had sexual intercourse with R.S. impacted its view of character evidence Puckett admitted during the probation revocation hearing, when it expressed fear that Puckett's younger brothers might in the future have intercourse with twelve-year-old girls.

The trial court indicated that Puckett's original plea agreement was the result of incredible generosity on the State's part and that he in fact should have been convicted of one Class B felony, at least. We note that the plea agreement process is one where discretion, evidence-weighing, and knowledge of local courts and local social mores all come into play. Prosecutors generally "have clearly recognized and very broad discretion in the performance of their duties and, more specifically, in making decisions as to which persons arrested for crimes they will actually ... prosecute to the fullest extent of the law," subject to constitutional limitations. *Mueller v. State*, 837 N.E.2d 198, 205 (Ind. Ct.App.2005). We believe it is inappropriate for a judge, several years after the fact, to question a plea that was reviewed and accepted by the then-sitting trial judge.

▮ A plea agreement is a contract that binds the defendant, the State, and the trial court once it is accepted by the court. *St. Clair v. State*, 901 N.E.2d 490, 492 (Ind.2009). There are a number of cases, arising in the context of original sentencing, holding to the effect that once a trial court accepts a plea agreement, it cannot punish a defendant at sentencing for the State's perceived leniency in reaching the agreement in the first place. *See Nybo v. State*, 799 N.E.2d 1146, 1152 (Ind.Ct.App.2003); *see also Farmer v. State*, 772 N.E.2d 1025, 1027 (Ind.Ct.App. 2002) (holding trial court improperly relied upon facts constituting crimes that were dismissed as part of plea agreement in sentencing defendant for crime he actually pled guilty to); *Conwell v. State*, 542 N.E.2d 1024, 1025 (Ind.Ct.App.1989) (holding that when defendant pleads guilty to a lesser included offense of which he or she was charged, trial court in sentencing defendant cannot rely upon element distinguishing the greater offense from the lesser as an aggravating circumstance). Similarly, in the case of jury trials where a defendant is convicted of a lesser included offense, the trial court cannot use sentencing to express disapproval of the jury's verdict and to impose a harsh sentence to compensate for the perceived erroneous verdict. *See Hamman v. State*, 504 N.E.2d 276, 278 (Ind.1987).

▮ We conclude that a defendant who enters into a plea agreement is entitled to the benefits of that bargain, even in a later probation revocation proceeding. A trial court's belief that a sentence imposed under such an agreement was "too lenient" is not a proper basis upon which to determine the length of a sentence to be imposed following a revocation of probation. We also hold that it is improper when revoking probation for a trial court to find that the defendant actually committed a more serious crime than the one or ones of which he or she was originally convicted.

The trial court here also relied upon probation violation allegations that the State dismissed and did not present any evidence on as part of its reasoning for entirely revoking Puckett's suspended sentence. It seemed to discuss an allegation that Puckett had contact with a fourteen-year-old girl, later acknowledging that this and other allegations had been dismissed but that "you can't wipe all those things out of your head...." Tr. p. 17. It was erroneous for the trial court to rely upon dismissed probation violation allegations when deciding what sentence to impose for Puckett's admitted probation violation, especially given that Puckett was afforded no due process opportunity to present any evidence to contradict such allegations.

The trial judge also engaged in an extended discussion regarding his personal beliefs regarding the importance of the sex offender registry, including noting his personal use of the registry. Again within the context of original sentencing, it is improper for a trial court to impose a harsh sentence on the basis of the trial court's desire to send a personal philosophical message about the general severity of an offense, rather than focusing upon facts that are peculiar to the particular defendant and offense. *Scheckel v. State*, 655 N.E.2d 506, 510 (Ind.1995). This court does not doubt the importance of the sex offender registry, but the trial court's discussion of that importance fails to reveal anything particularly egregious about Puckett's failure to register. In any event, Puckett was separately punished for that failure to register.

We are cognizant of the broad discretion that a trial court has in revoking probation and determining an appropriate sentence for a probation violation. Such discretion, however, is not boundless and it may be abused. We further acknowledge that we have cited cases addressing improprieties in original sentencing statements; as such, we are not today holding that any one single "error" in a probation revocation statement will warrant reversal of a probation revocation sentence as it possibly could in the original sentencing context. Taken together, however, the trial court's statement of reasons regarding Puckett's revocation of probation leads us to conclude that it abused its discretion by considering improper factors before imposing sentence.[3]

As Puckett acknowledges, because this case arises from a probation revocation proceeding, Indiana Appellate Rule 7(B) does not apply here. *See Jones v. State*, 885 N.E.2d 1286, 1290 (Ind.2008). As such, we lack the power to revise Puckett's probation revocation sentence, which is the remedy often utilized in original sentencing cases where a trial court has relied upon improper reasons in sentencing a defendant. Thus, we remand for the trial court to conduct another hearing regarding revocation of Puckett's probation and to determine an appropriate sanction for his admitted violation without relying upon the improper factors that we have outlined in this opinion.[4]

3. The trial court did state, in response to defense counsel's objection to some parts of the trial court's statement of reasons for revoking Puckett's probation, that it believed the mere fact of his conviction for failing to register as a sex offender was enough by itself to warrant the punishment it imposed. We find this statement to be insufficient to "unr-ing the bell" of all the improper comments previously made.

4. Despite Puckett's request, we will refrain at this time from requiring the trial judge in this case to recuse himself from hearing this case upon remand, where there has not first been a motion for change of judge presented to him. *Cf. Thakkar v. State*, 644 N.E.2d 609

## Conclusion

The trial court abused its discretion by considering multiple improper factors before requiring Puckett to serve the entirety of his previously-suspended sentence upon his admission to violating probation. We reverse and remand for a new sentencing determination that is consistent with this opinion.

Reversed and remanded.

ROBB, C.J., and BRADFORD, J., concur.

(Ind.Ct.App.1994) (holding trial court abused its discretion in denying motion for change of judge filed after appellate remand for resentencing).