**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID M. PAYNE**
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMIAH WORKMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1312-CR-1020 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Dana J. Kenworthy, Judge
Cause No. 27D02-1107-FC-213

**May 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, after appellant-defendant Jeremiah Workman was released from jail, he neglected to contact his probation officer and to complete a domestic battery program, both of which were required by the terms of his probation. Instead, he lived outside, refused to accept work, and assumed that someone had informed his probation officer of his release.

A petition for revocation of probation was filed, alleging that Workman had violated the terms of his probation for failure to report to his probation officer and to complete the domestic battery program. The trial court concluded that Workman had violated both conditions and ordered that Workman serve the balance of his previously-suspended sentence.

Workman now appeals, arguing that there was insufficient evidence that he violated the terms of his probation and that the trial court erred in ordering him to serve the balance of his sentence. Finding sufficient evidence and no other error, we affirm the judgment of the trial court.

## FACTS

On July 29, 2011, Workman was charged with class C felony battery resulting in bodily injury to a pregnant woman, class D felony domestic battery, and class D felony strangulation. On March 12, 2012, Workman entered a plea agreement in which he pleaded guilty to class C felony battery resulting in injury to a pregnant woman and class D felony domestic battery. In exchange for Workman's guilty plea, the State agreed to dismiss the charge for class D felony strangulation. Workman was sentenced to six years

imprisonment for the class C felony, with two years executed and the remainder suspended to probation. This sentence was to run concurrently with the sentence imposed for the class D felony, which was three years, with two years executed and the remaining year suspended to probation.

On April 8, 2013, the State filed a petition for revocation of probation, alleging that Workman had failed to report to his probation officer and that he had failed to submit to a drug test. On May 20, 2013, Workman admitted to the violations in a written admission agreement, which provided that seventy days of his previously-suspended sentence be revoked. The trial court accepted the admission agreement and revoked seventy days of Workman's suspended sentence.

On July 23, 2013, Workman was released from the Starke County jail. Workman had been informed that he was to contact his probation officer in Grant County when he was released from jail.

On October 9, 2013, the State filed a second petition for revocation of probation, alleging that Workman had failed to report to his probation officer and that he had failed to complete a domestic battery program. Workman claimed that he could not contact his probation officer because he was unable to return to Grant County after he was released and that he slept outside for twelve days until his mother could gather enough money to make the trip to get him.

More particularly, at the December 2, 2013 evidentiary hearing, Workman testified:

3

> I ended up having to find a tarp and dig a hole in the ground and lay on one-half of the tarp and cover up with the other half to go to sleep at night, as I was collecting cans to try to get the money to get home but the recycling place was like four miles down the highway so I'd have to walk all that down the highway to even turn it in.

Tr. p. 21.

When asked why Workman did not report to his probation officer when he did make it home, he responded:

> I figured by the time I'd gotten out of jail they told me when I left there that they would contact my probation officer for me and let her know that I was out and to let her know that I would be able to contact her when I got back to Marion and then when that ended up going awry or whatever you want to call it, I ended up ---- it, it just didn't work out the way I thought it would.

Id. at 22.

Regarding Workman's failure to complete the domestic battery program, Workman testified that he did not have the $20 weekly fee to participate in the treatment program. However, Workman also testified that he had a cousin who had told him that he had "a job that will pay you $10 an hour and you can work all the hours you want to work," but that he had "messed up with the best of intentions for what was right for me and my kids." Id.

At the conclusion of the evidentiary hearing, the trial court determined that Workman had violated both terms of his probation and reinstated the balance of his previously-suspended sentence or three years and 295 days. The trial court considered three factors in determining its sentence: (1) Workman's prior criminal history including his previous probation violation; (2) in 2002, Workman was ordered to complete an anger

4

management program after committing domestic battery. In this cause, Workman's level of violence has increased in another domestic violence case; (3) Workman made no effort to enroll in the domestic violence program that was ordered as part of his sentence. Although Workman claimed that he could not afford the program, he raised transportation money by scrapping aluminum cans and refused a job opportunity presented by his cousin. Workman now appeals.

## DISCUSSION AND DECISION

Workman contends that there was insufficient evidence to sustain the trial court's decision to revoke his probation. Additionally, Workman asserts that the trial court erred in requiring him to serve the entire balance of his previously-suspended sentence.

### I. Sufficiency of the Evidence

Workman argues that there was insufficient evidence to sustain the revocation of his probation. A trial court has wide discretion to impose conditions of probation; however, once the trial court accepts a plea agreement, it is bound by its terms, and its discretion to establish terms of probation are limited. Jackson v. State, 968 N.E.2d 328, 332 (Ind. Ct. App. 2012).

A probation revocation hearing is in the nature of a civil proceeding; accordingly, the State is required to prove the alleged violation by a preponderance of the evidence. Cox v. State, 706 N.E.2d 547, 551 (Ind. 1999). We will affirm when there is substantial evidence of probative value to support the trial court's judgment that the probationer violated a condition of probation. Goonen, 705 N.E.2d at 211-12.

5

In this case, Workman admitted that he did not report to his probation officer after he was released from the Starke County jail. Tr. p. 21. Workman claimed that he had no means of returning to Grant County and had to live "on the streets" for ten to twelve days. Id. at 28. Workman did not report to his probation officer from July 23, 2013, until October 8, 2013. Appellant's App. p. 60. Workman does not account for the remainder of time that he neglected to report to his probation officer.

As for Workman's decision to not participate in domestic battery class, he claimed that he could not afford the weekly fee. Workman's cousin, however, offered him a job that paid $10 hourly rate, and Workman could work as many hours as he wanted. Tr. p. 22. Workman essentially offered no explanation as to why he did not take advantage of this opportunity, particularly in light of his obligation to complete the domestic battery class.

In light of the facts and circumstance above, the State presented sufficient evidence for the trial court to determine by a preponderance of the evidence that Workman violated the conditions of his probation.

### III. Sentence

Workman claims that the trial court erred by ordering him to serve the balance of his previously-suspended sentence. Once a trial court has concluded that probation has been violated, it may continue the defendant on probation, extend the probationary period for not more than one year beyond the original period, or order all or part of the previously-suspended sentence to be executed. Ind. Code § 35-38-2-3(h).

We review a trial court's decision in a probation revocation proceeding for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Puckett v. State, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011).

Workman relies on Puckett in support of his argument that the trial erred in sentencing him. However, his reliance on Puckett is misplaced, insofar as that trial court relied on its belief that Puckett's plea agreement was too lenient and engaged in a monologue regarding personal beliefs about the importance of the sex offender registry. Id. at 1187-88. Additionally, the trial court admitted that it could not forget the alleged probation violations that had been dismissed. Id. at 1188. Put another way, the trial court allowed personal philosophical belief about the severity of the offense to impermissibly influence its sentencing decision. Id.

Here, by contrast, in deciding to order Workman to serve the balance of his previously-suspended sentence, the trial court considered Workman's prior criminal history, his escalating anger management issues, and his failure to enroll in the domestic battery program that was a part of his sentence. Appellant's App. p. 65. Indeed, the trial court opined that if Workman would not honor "a bargained for contract indicating that [he] would complete the batterer's program and that [he] would follow the terms of [his] probation," then he would have to do so inside the Indiana Department of Correction. The trial court clearly stated its reasons for imposing the sentence without resorting to personal philosophical views. Under these circumstances, the trial court did not err.

7

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.