## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2019, 6:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Valerie K. Boots<br>Marion County Public Defender Agency<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Courtney Staton<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Salatheo Isiah Moss,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 5, 2019<br><br>Court of Appeals Case No.<br>18A-CR-3022<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey L. Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1711-F5-43139 |

**Barteau, Senior Judge.**

# Statement of the Case

[1] Salatheo Moss appeals the trial court's revocation of his placement in community corrections. We affirm.

# Issue

[2] Moss raises one issue: whether the State presented sufficient evidence to support the trial court's determination that Moss violated a condition of his placement.

# Facts and Procedural History

[3] On November 7, 2017, the State charged Moss with four Class A misdemeanors: possession of a handgun without a license; unlawful possession of a firearm by a domestic batterer; dealing in marijuana; and possession of marijuana. In a separate document, the State alleged the count of possession of a handgun without a license should be enhanced to a Level 5 felony because Moss has a prior conviction for the same offense.

[4] The parties negotiated a plea agreement. Moss agreed to plead guilty to possession of a handgun without a license, a Level 5 felony, and unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor. In exchange, the State agreed to dismiss the other counts, as well as all counts in another pending case involving Moss. The parties further agreed that Moss's aggregate sentence would be capped at four years, to be served in the Marion

County Community Corrections Program ("the Program"), subject to compliance with the Program's requirements.

[5] The trial court accepted the plea agreement. On August 27, 2018, the court sentenced Moss according to the terms of the agreement and issued an order of commitment to the Program. The sentencing judge wrote "no violations!!" on the commitment order. Appellant's App. Vol. II, p. 87. Moss was immediately placed in a work release facility.

[6] On September 21, 2018, the State filed a notice of violation, alleging Moss violated the terms of his placement by refusing to comply with an instruction to submit to a strip search. On September 27, 2018, the trial court held a hearing on the notice. Moss admitted to the violation. The court directed Moss to continue with his community corrections placement.

[7] On November 8, 2018, the State filed another notice of violation, alleging Moss violated the terms of his placement by possessing or using a controlled substance. The trial court ordered Moss detained without bond pending resolution of the notice of violation. On November 29, 2018, the court held an evidentiary hearing. At the end of the hearing, the court: (1) determined Moss had violated the terms of his placement; (2) revoked his placement; and (3) ordered him to serve the remainder of his sentence in the Indiana Department of Correction. This appeal followed.

# Discussion and Decision

[8] Moss argues the State failed to present sufficient evidence to sustain the trial court's determination that he had violated the terms of his community corrections placement. A reviewing court treats a petition to revoke placement in a community corrections program the same as a petition to revoke probation. *Bass v. State*, 974 N.E.2d 482, 488 (Ind. Ct. App. 2012). A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Id.* Rather, such placement is a "'matter of grace'" and a "'conditional liberty that is a favor, not a right.'" *Id.* (quoting *Million v. State,* 646 N.E.2d 998, 1002 (Ind. Ct. App.1995)).

[9] A revocation hearing is in the nature of a civil proceeding, and the State must prove a violation of the terms of placement by a preponderance of the evidence. *Washington v. State*, 758 N.E.2d 1014, 1017 (Ind. Ct. App. 2001). We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we look to the evidence most favorable to the judgment. *Id.* If there is substantial evidence of probative value to support the judgment, revocation is appropriate. *Id.*

[10] Among other conditions of his placement in community corrections, Moss was required to refrain from consumption or possession of illegal drugs. On November 3, 2018, at 8:10 p.m., Eddra Price, who was a corrections officer at the work release facility where Moss had been placed, encountered Moss in a dormitory. Moss was sitting up in an unmade bed, apparently asleep. Price

knew Moss was in the wrong dormitory because Moss's assigned bunk was in a different room.

[11] Price approached Moss and noticed that he had ashes on his pants and feet. There were also ashes on the floor. Price determined that Moss had been smoking something. He woke Moss, who struggled to stand up. Moss also displayed slurred speech and had red, glassy eyes. Price had interacted with Moss on previous occasions and had never seen him have trouble standing or speaking or display red eyes.

[12] Price searched Moss. Moss would not stay still and kept reaching toward his right pocket. Price reached into Moss's right pocket and retrieved a folded-up piece of paper. When he opened the paper, he found a green, leafy substance. Price recognized the substance as "K2 or Spice," a controlled substance. Tr. Vol. II, p. 20.

[13] Next, Price took Moss to a holding cell and strip searched him. He did not find any other contraband. Price then left Moss in the cell and searched Moss's bunk and locker. He did not find contraband there, either. Price released Moss from the holding cell.

[14] Later that same night, at around 8:40 p.m., Price entered Moss's dormitory. He saw Moss sitting up in his bunk, apparently asleep. A "small rolled cigarette" was near Moss's hand on the bunk. *Id.* at 21. Moss had ashes on his face. Price woke Moss, who again had red glassy eyes and slurred speech.

Moss argues there is insufficient evidence to prove the green, leafy substance Price found in his pocket was a controlled substance. Moss further argues the substance was never tested, and Price lacked formal training in recognizing K2 or Spice. We disagree that the evidence was insufficient. The identity of a controlled substance may be established through witness testimony and circumstantial evidence. *Yoakum v. State*, 95 N.E.3d 169, 175 (Ind. Ct. App. 2018), *trans. denied*. Price explained that he had previously encountered K2 or Spice fifteen to twenty times in the course of his work, and it had a distinctive smell. The green, leafy substance he found on Moss had the same smell. In addition, Moss demonstrated signs of intoxication, including slurred speech, difficulty standing, and glassy, red eyes. This evidence is sufficient to establish that Moss possessed a controlled substance, in violation of the terms of his community corrections placement. *See id.* (State presented sufficient evidence to prove defendant possessed Spice; officer identified Spice based on past encounters with the substance).

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Baker, J., and May, J., concur.